UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

TONY FOUDY,
SHAUN FOUDY,                                    Case No. 2:12-cv-14462

      Plaintiffs,

v.                                              Judge Jose E. Martinez

SAINT LUCIE COUNTY SHERIFF'S OFFICE,
et al.                                          Magistrate Judge Frank J. Lynch

      Defendants.

_____/

## DEFENDANT INDIAN RIVER SHERIFF'S OFFICE'S
## MOTION TO DISMISS

THE DEFENDANT, INDIAN RIVER SHERIFF'S OFFICE, through its undersigned attorneys, pursuant to Rule 12(b)(6) of the Fed. Rules Civ. Proc., files its MOTION TO DISMISS and in support thereof would state as follows:

1. That the Plaintiffs, as to the Defendant INDIAN RIVER COUNTY SHERIFF'S OFFICE, have failed to state a claim for relief.

2. Further, and in support of this Motion to Dismiss, the Defendant INDIAN RIVER COUNTY SHERIFF'S OFFICE would refer this honorable Court to the Memorandum of Law incorporated herein by reference and made a part hereof.

1

## <u>MEMORANDUM OF LAW</u>

### <u>I. INTRODUCTION</u>

In this action, the Plaintiffs have sued the above named governmental entities as Defendants, their official governmental agency head, the Sheriff, and numerous other governmental agencies and individual agency employees on the following claims:

I - VIOLATION OF 18 USC § 2721;

II - VIOLATION OF 42 USC § 1983;

III - VIOLATION OF 42 USC § 1983;

IV - VIOLATION OF 42 USC § 1983; and

V - STATE TORT/CONSTITUTIONAL CLAIM FOR INVASION OF PRIVACY.

The original Complaint consists of 63 pages containing 378 paragraphs in which numerous government entities, their official governmental agency heads, and numerous individual agency employees are sued. In their lawsuit, Plaintiffs claim that their privacy was invaded by a number of Florida law enforcement officers who accessed their private driver's license information between July 2005 and June 2011 without any legitimate purpose in violation of federal and state law. Specifically, Plaintiffs contend that the described actions violated the federal driver privacy protection action (DPPA), Title 18 USC § 2721 et seq., which statute purports to strict limitations on the state's ability to use commercially specified information collected pursuant to the state police power, violated their federal and state rights to privacy and their Fourth Amendment right to be free from unreasonable search and seizure.

Plaintiffs' lawsuit, at least as to this defendant, Indian River County Sheriff's Office, fails to state a claim as a matter of law for the following reasons:

1. The Indian River County Sheriff's Office is not *sui juris* and is not subject to suit;

2. The Complaint is in violation of the requirements for a pleading under Rule 8 of the Fed. Rule of Civ. Proc.;

3. Plaintiffs' claim does not establish a violation of the Fourth Amendment;

4. Plaintiffs fail to allege a claim under Title 42 USC § 1983 upon a theory of custom or policy, or failure/inadequate training;

5. Application of the DPPA, Title 18 USC § 2721 to the circumstances as alleged violates the U.S. Constitution as an improper exercise by Congress of its power under the commerce clause;

6. The Plaintiffs' Complaint improperly joins defendants; and

7. The Plaintiffs' Complaint fails to state a cause of action for monetary damages for an alleged violation of the Florida Constitution.

## II. STANDARD OF REVIEW

A complaint must provide the sufficient grounds of entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The law does not require "detailed factual allegations, but it demands 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. "[B]are assertions" which amount to nothing more than a "formulaic recitation of the elements" of a cause of action, should be rejected as "conclusory and not entitled to be assumed true." *Id.* at 681; see also *S.D. v. St. Johns County School District*, 2009 U.S. Dist. LEXIS 110198 (M.D. Fla. 2009).

Where the well-plead facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Iqbal,* 556 U.S. at 679

(while a court must consider the allegations contained in the complaint as true, such principle "is inapplicable to legal conclusions"). As the United States Supreme Court has stated:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (internal quotations and citations omitted).

<u>III. ARGUMENT</u>

*1.*     *FLORIDA SHERIFF'S OFFICES ARE NOT SUI JURIS*

There is no such legal entity as the Indian River County Sheriff's Office. See Article VIII, Section 1(d), Florida Constitution; see Chapter 30, Florida Statutes (2004); see Section 768.28(9)(a), Florida Statutes (2004); see *Parker v. Robertson*, 360 So.2d 785 (2nd DCA 1978); *Ruff v. Wells*, 504 So.2d 16 (2nd DCA 1987); *Ragusa v. Streator Police Department*, 530 F.Supp. 814 (N.D. Ill. 1981); *Shelby v. City of Atlanta*, 578 F.Supp. 1368 (N.D. Ga. 1984); *Agresta v. City of Philadelphia*, 624 F.Supp. 117 (E.D. Pa. 1988); *Post v. City of Fort Lauderdale*, 750 F.Supp. 1131 (S.D. Fla. 1990); *Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992); *Jones v. Collier County Sheriff's Department*, 1996 W.L. 172989 (M.D. Fla. 1996); *Mann v. Hillsborough County Sheriff's Department*, 946 F.Supp. 962 (M.D. Fla. 1996).  No cause of action can be maintained as against the Indian River County Sheriff's Office. To the extent that a governmental entity is liable for the conduct as alleged, such suit is properly brought as against the named office holder, in his official capacity.

2.     THE COMPLAINT IS IN VIOLATION OF THE REQUIREMENTS FOR A PLEADING UNDER

RULE 8 OF THE FED. RULE OF CIV. PROC.

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also *Conley v. Gibson,* 355 U.S. 41, 47 (1957). *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981); *Roe v. Aware Women's Ctr. for Choice*, 253 F.3d 678, 684 (11th Cir. 2001).

Here, rather than directly and succinctly stating their claims, Plaintiffs "shotgun" the same factual allegations against all of the Defendants, reincorporating countless irrelevant and unrelated factual averments into each count, in violation of well-settled law. See, e.g., *Byrne v. Nezhat*, 261 F.3d 1075, 1128-34 (11th Cir. 2001)(explaining how "shotgun pleadings," such as this, impede the administration of justice); *Belton v. Russell County Bd. of Educ.*, 2010 U.S. Dist. LEXIS 108752 (M.D. Ala. 2010); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008)("complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years"). The Complaint should be dismissed in its entirety for failure to comply with Rule 8.

3.     PLAINTIFFS' CLAIM DOES NOT ESTABLISH A VIOLATION OF THE FOURTH

AMENDMENT.

In Count III, Plaintiffs seek to impose a liability claim against a governmental entity under 42 U.S.C. §1983 based upon alleged Constitutional violations outlined in the previous count, or purported violations of the *Fourth Amendment*. Importantly, in the absence of a constitutional violation by an individual law enforcement officer, the officer's agency cannot be liable under §1983. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (per curiam); see also *Wyke v. Polk*

*County School Board*, 129 F.3d 560 (11th Cir. 1997) (citing *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)); *Rooney v. Watson*, 101 F.3d 1378 (11th Cir. 1996); cert. den., 118 S.Ct. 412 (1997). Based upon these allegations, the claims against the "entity defendant" necessarily fail since the Complaint fails to demonstrate an underlying constitutional violation.

The *Fourth Amendment* states, in pertinent part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. Here, however, Plaintiffs do not allege that they or anything they controlled was improperly searched. This is a critical distinction since these allegations plainly do not implicate the *Fourth Amendment*.

As an initial matter, the Supreme Court has noted that the violation of a right of privacy is "founded in the *Fourteenth Amendment* concept of personal liberty, not the *Fourth Amendment.*" *Stoianoff v. Commissioner of Motor Vehicles*, 107 F.Supp.2d 439 (S.D.N.Y. 2000)(citing, *Whalen v. Rose*, 429 U.S. 589, 599, 97 S.Ct. 869, 876 n.23 (1977). In this case though, since the Complaint does not implicate any fundamental rights, such as intimate facets of an individual's personal life, such as marriage, procreation or education, a *Fourteenth Amendment* claim would fail even if pled.

Even if the *Fourth Amendment* were the appropriate textual source upon which to seek relief, no violation exists because, as a matter of law, Plaintiffs did not have an objectively reasonable expectation of privacy in the information allegedly accessed. In *Johannson v. Emmons*, 2010 U.S. Dist. LEXIS 9704 (M.D. Fla. 2010), the plaintiff, Johannson, brought suit against Emmons alleging that he improperly accessed information available because of his employment with the 9th District's State Attorneys Office. Johannson asserted that the information obtained, including from D.A.V.I.D. violated her *Fourth Amendment* rights because she had an objectively reasonable expectation of

6

privacy in the information accessed. The court disagreed:

> There is no reasonable expectation of privacy in the business records of third parties
> exposed to employees in the ordinary course of business. Because the documents
> attached to the Complaint imply that the databases accessed by Emmons were
> typically accessed for legitimate purposes of the SAO, Johansson could not have held
> a reasonable expectation of privacy in the information contained in those databases...
> Emmons was approved for DAVID certification and JIS access as MIS Director so
> he might better understand problems that inadvertently occur with other users in [the
> SAO]. Accordingly, Emmons' alleged access of Johansson's records did not violate
> her *Fourth Amendment* rights.

*Id.* at *15-16 (internal quotations omitted) (*citing*, *U.S. v. Miller*, 425 U.S. 435, 440 (1976)
(distinguishing bank records from 'private papers' protected by the *Fourth Amendment*
because a person has no possessory or ownership interest in a bank's records); *Id.* at 442 (noting that
there can be no reasonable expectation of privacy in information exposed to employees in the
ordinary course of business); *U.S. v. Willis*, 759 F.2d 1486, 1498 (11th Cir. 1985)(noting that a
customer has no *Fourth Amendment* privacy interest in his records possessed by a motel, bank, or
phone company); *see also*, *U.S. v. Ellison*, 462 F.3d 557 (6th Cir. 2006) (plaintiff had no privacy
interest in information accessed by a police officer through a database accessible to the officer); *U.S.
v. Cobb*, 2012 U.S. Dist. LEXIS 186155 (E.D. Tenn. 2012)(officer did not violate *Fourth
Amendment* in conducting computer searches through NCIC)(*citing, Eagle v. Morgan*, 88 F.3d 620,
628 (8th Cir. 1996)(NCIC search did not violate plaintiff's federal constitutional rights).

Here, simply because a statute recognizes that the records are private does not convert a

statutory violation into a *Fourth Amendment* violation. Indeed, the challenged D.A.V.I.D. searches in Johansson were all conducted subsequent to the passage of the DPPA. On these alleged facts, Plaintiffs have not shown that their *Fourth Amendment* rights were violated.

### 4. PLAINTIFFS FAIL TO ALLEGE A CLAIM UNDER TITLE 42 USC § 1983 UPON A THEORY OF CUSTOM OR POLICY.

Even if there were an underlying Constitutional violation, Sheriff 's Offices cannot be held liable under the theory of *respondeat superior*, contrary to Plaintiffs' misguided attempt. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Whittington v. Village of Surfside*, 269 Fed. Appx. 918, 921 (11th Cir. 2008)(municipalities may not be held liable on a theory of *respondeat superior)*.

In order to prevail on any claim under 42 U.S.C. § 1983, Plaintiffs must establish that they were deprived of a right, privilege or immunity secured by the Constitution or the laws of the United States by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988); *Almand v. DeKalb County, Ga.*, 103 F.3d 1510, 1513 (11th Cir. 1997), cert. denied, 118 S. Ct. 411 (1997) (citing *Harvey v. Harvey*, 949 F. 2d 1127, 1130 (11th Cir. 1992).

To hold a Sheriff's Office (or a Sheriff) liable under § 1983, Plaintiffs must *also* show that an official policy or custom of the Sheriff's Office or the Sheriff was the "moving force" being the constitutional deprivation. *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005); *Sewell v. Town of Lake Hamilton*, 117 F.3d 488 (11th Cir. 1997), cert. denied, 118 S. Ct. 852 (1998); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991). "[T]he language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused the constitutional tort." *Monell*, 436 U.S.

at 691; *Grech v. Clayton County, GA*, 335 F.3d 1326 (11th Cir. 2003). Instead, to impose section 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). On this record, Plaintiffs cannot satisfy any of the above elements.

For purposes of § 1983 liability, a "custom" of a local government is a "practice that is so settled and permanent that it takes on the force of law." *Sewell*, 117 F. 3d at 489; *Grech v. Clayton County, Ga.*, 335 F.3d 1326 (11th Cir. 2003). Similarly, a "policy" is a "decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell*, 117 F.3d at 489; *Brown v. City of Fort Lauderdale*, 923 F. 2d 1474, 1479-80 (11th Cir. 1991) ("City policy may be implicated by the acts of individual policy-making official or by pervasive city custom."); *Monell*, 436 U.S. at 694 (". . . it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.")

In the instant case, Plaintiffs actually allege that the actions of the officers violating the DPPA acted in contravention of written rules of the defendant governmental entities, but that "formal rules" were disregarded. (D.E. 1, ¶374). This, however, still falls short of demonstrating through allegations of ultimate fact that an unconstitutional policy motivated the officers to engage in a constitutional violation, as required.

### 4.1    FAILURE TO TRAIN CLAIM IS LEGALLY INSUFFICIENT

Plaintiffs also seem to attempt to state a failure to train claim through insertion of the buzz words "deliberate indifference" in conjunction with oversight of the officers. (D.E. 1, ¶377). Again, these conclusory allegations do not meet the stringent standard for stating such a claim. In limited circumstances, a governmental entity may be liable under §1983 for a failure to train its officers. *City of Canton v. Harris*, 489 U.S. 378 (1989). The inadequacy of training may serve as the basis for §1983 liability, however, only where the failure to train amounts to a deliberate indifference to the rights of the persons with whom the officers come into contact. Id.; see also *Sewell v. Village of Lake Hamilton*, 117 F. 3d 488, 489-90 (11th Cir. 1997) (". . . municipal liability . . . may be based on a claim of inadequate training where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city policy or custom that is actionable under §1983.") (citations omitted).

To sufficiently allege a failure to train claim under 42 USC §1983, Plaintiffs must allege facts establishing that a defendant Sheriff's Office (or Sheriff) had clear notice of a need for training the involved officers and that in the face of that knowledge, the Sheriff's Office (or Sheriff) made a deliberately indifferent choice not to act. Harris, *supra*. Plaintiffs must allege facts establishing either: 1) **clear notice** to Sheriff's Offices (or Sheriff), prior to the challenged searches, of a need for additional training via a "pattern of constitutional violations...such that it knows or should have known that corrective measures [were] needed," *Young v. City of Augusta*, 59 F. 3d 1160, 1172 (11th Cir. 1995); or 2) that the "violation of federal rights…[was a] highly predictable consequence of a failure to equip law enforcement officers with the specific tools to handle recurring situations."

*Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409  (1997) (emphasis added). Under either, the requisite factual allegations are evidence of ***prior notice*** to a Sheriff's Office (or Sheriff) of the need for training ***in the particular area*** at issue, and a conscious, deliberately indifferent decision to take no action. *Gold v. City of Miami*, 151 F. 3d  1346, 1351 (11th Cir. 1998) ("[t]his Court has repeatedly held that without notice ... a municipality is not liable ...").

Here, Plaintiffs conclude that the Sheriff's Office (or Sheriff) "knew or should have known" of searches that were "unlawful, improper, unjustified, and of impermissible access to private information by other law enforcement personnel," but fails to cite to any such examples, despite the state's liberal public records law which would amply provide an opportunity to properly plead facts in support of her conclusions. See, *Wright v. Sheppard,* 919 F. 2d 665, 674 (11th Cir. 1990); see also, *Church v. City of Huntsville*, 30 F. 3d 1332, 1342-46 (11th Cir. 1994) (plaintiff's claims could not succeed without proof that the city had knowledge of prior incidents); *Popham v. City of Talladega*, 908 F. 2d 1561, 1564-65 (11th Cir. 1990) (finding no liability for failure to train when no pattern of incidents put the city on notice of a need to train); *Gold*, 151 F. 3d at 1350-52 (Section 1983 "failure to train" liability does not attach absent a "plainly obvious" need for training).

Plaintiffs proffer ***no*** allegations of ultimate fact tending to establish that the Sheriff's Office (or Sheriff) had actual notice of a need for training. Plaintiffs also fail to allege facts establishing that the Sheriff's Office or the Sheriff made a conscious, deliberately indifferent decision to take no action. Instead, contrary to well-settled Supreme Court and Eleventh Circuit precedent, the Plaintiffs have improperly opted to persist in proffering only conclusory allegations containing the "buzzwords" associated with the elements of a constitutional failure to train claim. The United States Supreme Court has specifically rejected such casual pleading. See *Bell Atlantic Corporation, et al.*

11

*v. Twombly*, 550 U.S. 544, 555; 127 S.Ct. 1955, 1964-65 (2007) ("Plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level.")(internal citations omitted). Plaintiffs' Section 1983 claim against Defendant Indian River County Sheriff's Office or Indian River Sheriff (Count III) should thus be dismissed.

5.     APPLICATION OF THE DPPA, TITLE 18 USC § 2721 TO THE CIRCUMSTANCES AS ALLEGED VIOLATES THE U.S. CONSTITUTION AS AN IMPROPER EXERCISE BY CONGRESS OF ITS POWER UNDER THE COMMERCE CLAUSE

The Supreme Court concluded in *Reno v. Condon*, 528 U.S. 141 (2000), that DPPA was a valid exercise of the commerce power. However, the case involved a different provision of the law - one limiting disclosure for the purpose of bulk mail advertising - than the one at issue in this case, and different facts. *Id.* at 143-145, 148.[1] Thus, *Reno* is only helpful for the general proposition that Congress enacted DPPA pursuant to its commerce power. *Reno* does not control on the question presented in this case: is driver information in commerce when a law enforcement officer using a

_____

[1]The Court further underscored the commercial context of the driver data as the basis for congressional authority by noting:

> The motor vehicle information which the States have historically *sold* is *used by insurers, manufacturers, direct marketers, and others engaged in interstate commerce* to contact drivers with customized solicitations. The information also is used *in the stream of interstate commerce by various public and private entities* for matters related to interstate motoring. Because drivers' information is, *in this context*, an article of commerce, *its sale or release into the interstate stream of business* is sufficient to support congressional regulation.

*Id.* At 148 (emphasis added).

12

channel restricted to law enforcement functions improperly obtains driver information for a non-commercial purpose such as penalization of that access is within Congress' powers under the Commerce Clause? Because the information in this situation is not in commerce, the answer must be no.

It is beyond dispute that the Court's holding in *Reno* that DPPA is constitutional was based on the assumption that the driver information subject to the Act is a "thing in interstate commerce" that is being "sold" for use in the private sector by private businesses. It is "in this context" that the "sale or release" of the information "into the interstate stream of business" was deemed "sufficient to support congressional regulation."

The defendant does not dispute that the commerce power extends to States insofar as they sell or offer to sell driver information. Their point is that the commerce power cannot supply the authority to legislate in the context presented here, where the state makes driver information available to state law enforcement agencies pursuant to its police power, even if law enforcement officers who access that information may do so for non-law enforcement and non-economic reasons. In short, no defendant can be held accountable under *federal law* if law enforcement officers improperly access driver information. That is a state matter that should, under our federal system, be addressed by state law.

Secondarily, Congress' power to regulate under the Commerce Clause is restricted to matters involving economic activity. Absent economic activity, Congress has no power to legislate.

In *Nat'l Fed'n of Indep. Bus. v. Sebelius*, – U.S. –, 132 S. Ct. 2566 (2012), (*NFIB*) the United States Supreme Court recently reaffirmed the principle that the Commerce Clause has significant limits that cannot be ignored, when the Court held that the requirement that most Americans must

obtain qualifying healthcare coverage (the Individual Mandate) under the federal Patient Protection and Affordable Care Act of 2010 to be a valid exercise of Congress's power to tax and spend, U.S. Const. art. I, § 8, cl. 1 (a power not implicated in the instant action).

Notably, a majority of the Justices expressly rejected the contention that the Individual Mandate was constitutional under the Commerce Clause, even as augmented by the Necessary and Proper Clause, *id.* at cl. 18. *See NFIB*, 132 S. Ct. at 2585-93 (Roberts, C.J.) and 2644-50 (four-Justice dissent).[2]

Chief Justice reaffirmed the longstanding principle that the federal government is one of only limited, specifically enumerated powers and that those not expressly granted to the federal government remained with the states and the people; and that, for Congress to act, it "still must show that a constitutional grant of power authorizes each of its actions." *NFIB*, 132 S. Ct. at 2577-78. Thus, Congress may act only pursuant to its powers as enumerated in the Constitution.[3]   One of Congress's enumerated powers is the authority to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art I, § 8, cl. 3. In *NFIB*, the Court, quoting its earlier opinion in *United States v. Morrison*, 529 U.S. 598 (2000), set forth the three areas to which Congress's commerce power extends:

> Our precedents read [the Commerce Clause] to mean that Congress may regulate "the channels of interstate commerce," "persons or things in interstate commerce,"

---

[2]The Chief Justice expressly declared his opinion to be in accord with the dissent's opinion as regards the restrictions on the Commerce Clause's reach. *Id.* at 2593.

[3] *See also, e.g., Dorr v. United States*, 195 U.S. 138, 140 (1904) (it is "settled that the Constitution … is the only source of power authorizing action by any branch of the federal government."); *Ex parte Quirin*, 317 U.S. 1, 25 (1942) (Congress "possess[es] no power not derived from the Constitution."); *United States v. Butler*, 297 U.S. 1, 62-63 (1936).

and "those activities that substantially affect interstate commerce." *Morrison, supra,* at 609, 120 S. Ct. 1740 (internal quotation marks omitted).

*NFIB,* 132 S. Ct. at 2578.

Although the reach of the commerce power has expanded, it continues to be subject to limits that must be observed lest Congress "everywhere extend[] the sphere of its activity and draw[] all power into its impetuous vortex." *See id. at 2589* (quoting The Federalist No. 48, at 309 (J. Madison) (C. Rossiter ed. 1961)).

The four-justice dissent in *NFIB,* in that portion of their opinion discussing the Commerce Clause (which, as noted, was declared by the Chief Justice to be in accord with his opinion), agreed with the Chief Justice's view of a commerce power that was subject to definite limits. *NFIB,* 132 S. Ct. at 2646.

Thus, for a regulation by Congress to pass muster under the commerce power, it must regulate either the channels of interstate commerce, things in interstate commerce, or activities that substantially affect interstate commerce. *NFIB,* 132 S. Ct. at 2578.

In *United States v. Lopez,* 514 U.S. 549 (1995), the Court dealt with the third, and arguably broadest, category for exercising Congress's commerce power: where activities have a substantial relation to interstate commerce. In *Lopez,* the issue was the constitutionality of a federal law criminalizing possession of a firearm in a school zone. Underscoring the critical importance of a substantial nexus to interstate commerce — that is, *economic activity* — the Court held that Congress had exceeded its commerce power, because "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." 514 U.S. at 567.

Similarly, in *United States v. Morrison,* 529 U.S. 598 (2000), the Court struck down a

provision of the Violence Against Women Act because "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity." 529 U.S. at 613. It concluded: "We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." 529 U.S. at 617.

In *NFIB*, the majority rejected the "substantial relation" prong of the commerce power as a basis for upholding the Individual Mandate. While that category empowers Congress to legislate as to activities having a substantial effect on commerce, the failure or refusal of persons to obtain healthcare coverage is not economic activity; rather, it is the absence of economic activity, and hence is not subject to regulation under the commerce power. *See NFIB*, 132 S. Ct. at 2587.

Where, as in *Lopez, Morrison*, and *NFIB*, Congress seeks to extend its reach to matters not involving economic activity — to matters divorced from interstate commerce — it has exceeded its constitutional powers.

When Florida makes driver information available to its law enforcement community pursuant to its police power, it is not engaged in economic activity that can be subject to Congress' regulation. Similarly, the mere fact that a law enforcement officer obtained the plaintiffs' personal information for a non-law enforcement purpose, without more, does not constitute economic activity subject to federal regulation.

Consistent with the nature and limitations of the commerce power, DPPA's provisions should be construed to apply only in the context of such data being "things in commerce" — and not in the context of information being shared on a restricted basis among law enforcement agencies and officers. This follows because providing driver information to law enforcement officers does not involve placing driver information into commerce, and there is no reason to suppose that it

might. In that context — central to the exercise of the States' police power — the information is noncommercial in nature, and thus the second category of commerce power cannot sustain congressional legislation controlling such sharing at the state or local level.

The sharing of driver information within the law enforcement community has no effect on interstate commerce — much less the requisite "substantial effect" required for the third category of commerce power to support congressional action.

This is the case in Florida. Florida law expressly allows access to driver and vehicle data by "any state agency, state attorney, sheriff, or chief of police[,]" but with the added restriction that "[s]uch … state agency, state attorney, or law enforcement agency *may not sell, give away, or allow the copying of such information*." Fla. Stat. § 322.20(9) (emphasis added). The open access to driver information for Florida's law enforcement agencies, coupled with the prohibition on the agencies' sale or disclosure of such information, underscores that data sharing is internal within the law enforcement agencies and *noncommercial* in nature.

Thus, the disclosures complained of by the plaintiffs had no connection with interstate commerce, the constitutional lynchpin of DPPA. The plaintiffs' driver information was not an article in commerce or intended — or allowed by state law — to be placed in commerce. The case is limited to these narrow facts, which do not support federal regulation.

The commerce power cannot give Congress a basis for controlling how driver information obtained by a state is shared within that state's law enforcement community. Such matters are for the States to decide, in the exercise of their general police power — a power denied to the federal government under the Constitution.

"If a federal regulation ostensibly justified by the Commerce Clause unduly infringes on the

general police power, a power that was never conferred on the national government, it follows that such regulation exceeds the limited federal power." *Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 169 F.3d 820, 903 (4th Cir. 1999) *aff'd sub nom. United States v. Morrison*, 529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000), Neimeyer, J., concurring; *Printz v. United States*, 521 U.S. 898, 923 (1997) ("When a law ... violates the principle of state sovereignty ... it is not a law ... proper for carrying into Execution the Commerce Clause.").

The general police power rests at the core of state sovereignty; thus to read the Commerce Clause broadly so as to infringe significantly on the states' general police power undermines state sovereignty in violation of the federal structure created by the Constitution and confirmed by the Tenth Amendment. *Id.*; *Printz v. United States*, 521 U.S. 898, 918-919 (1997); *Fed. Mar. Comm'n v. S. Carolina State Ports Auth.*, 535 U.S. 743, 769, 122 S. Ct. 1864, 1879, 152 L. Ed. 2d 962 (2002); *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905) ("the State[s] did not surrender [their police power] when becoming [] member[s] of the Union under the Constitution."); *Lopez*, 514 U.S. at 566 ("The Constitution … withhold[s] from Congress a plenary police power"); *Morrison*, 529 U.S. at 618 ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims."); *NFIB*, 132 S. Ct. at 2578 ("Our cases refer to this general power of governing, possessed by the States but not by the Federal Government, as the "police power."). See also *Com. of Va. v. Browner*, 80 F.3d 869, 880 (4th Cir. 1996) ("Congress lacks power to impinge upon 'the core of sovereignty retained by the States.'").

Consequently, the Commerce Clause must be interpreted to preserve the federal structure of the Constitution and the states' general police power as an essential aspect of their sovereignty

18

within that structure. *Printz, supra; Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 169 F.3d at 905, Neimeyer, J., concurring.

Florida's ability to regulate public safety on the state's roads springs from its general police power and is a core attribute of state sovereignty. "[T]he power to create and enforce a legal code, both civil and criminal is one of the quintessential functions of a State." *Diamond v. Charles,* 476 U.S. 54, 65 (1986); *Younger v. Harris,* 401 U.S. 37, 46 (1971) (right to formulate and enforce penal sanctions is an important attribute of state sovereignty); *Pryor v. Reno*, 171 F.3d 1281, 1288 (11th Cir. 1999) cert. granted, judgment vacated on other grounds, 528 U.S. 1111 (1999) ("Only States collect driver's license and motor vehicle information. This is an exercise of sovereignty. See *Peel v. Florida Dept. of Transp.*, 600 F.2d 1070, 1083 (5th Cir.1979) ( 'Overseeing the transportation system of the state has traditionally been one of the functions of state government, and thus appears to be within the activities protected by the tenth amendment')"); *United States v. Best*, 573 F.2d 1095, 1103 (9th Cir.1978) ("'[T]here is little question that the licensing of drivers constitutes 'an integral portion of those governmental services which the States and their political subdivisions have traditionally afforded their citizens'").

In addition, the state's ability to determine and to regulate its internal administration is equally a core attribute of state sovereignty. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)[4]; *Com.*

---

[4] "The present case concerns a state constitutional provision through which the people of Missouri establish a qualification for those who sit as their judges. This provision goes beyond an area traditionally regulated by the States; it is a decision of the most fundamental sort for a sovereign entity. Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign. 'It is obviously essential to the independence of the States, and to their peace and tranquility, that their power to prescribe the qualifications of their own officers ... should be exclusive, and free from external interference, except so far as plainly provided by the Constitution of the United States.' *Taylor v. Beckham,* 178 U.S. 548, 570-571, 20 S.Ct. 890, 898, 44 L.Ed. 1187 (1900)."

*of Va. v. Browner,* 80 F.3d at 880 ("We also agree that an important aspect of a state's sovereignty is the administration of its judicial system.").

The management of state records is fundamental to a state's internal administration and thus a core element of state sovereignty. Yet, DPPA *overrides* state public records policy to the extent it purports to prohibit disclosures of Florida public records for noneconomic purposes, and dictates when and under what circumstances *state* records can be used, penalizing state officials should they violate the law.

Therefore, when DPPA penalizes any law enforcement officer or law enforcement agency for the disclosure of state public records when the information is not an article in commerce and the disclosure does not involve economic activity, it violates the Tenth Amendment.

### 6. THE PLAINTIFFS' COMPLAINT IMPROPERLY JOINS DEFENDANTS.

The Plaintiffs' Complaint improperly joins Defendants in this case. The Plaintiffs' Complaint names Defendants that work for numerous agencies from different counties. The Defendants lack commonality, aside from the allegation that the Defendants allegedly all violated the Plaintiffs' civil rights and all allegedly violated the DPPA. Federal Rule of Civil Procedure 20(2) states in pertinent part:

Defendants….may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

The Defendants' alleged actions in this matter do not arise out of "the same transaction, occurrence, or series of transactions or occurrences" and therefore the Defendants in this matter are improperly joined. See *Bubble Gum Products, LLC v. Doe*, 2012 U.S. Dist. LEXIS 100203 (S.D. Fla. 2012); *Tamiami Trail Tours v. Cotton*, 463 So.2d 1126 (Fla. 1985). The Defendants respectfully request that this Honorable Court severe any claims that survive this request for dismissal.

**7.    THE PLAINTIFFS' COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR MONETARY DAMAGES FOR AN ALLEGED VIOLATION OF THE FLORIDA CONSTITUTION.**

Count V of the Plaintiffs' Complaint seeks to recover money damages based on an alleged violation of Florida law, namely the tort of invasion of privacy. Specifically, the Plaintiffs seek to recover monetary damages based on an alleged violation of Article I, Section 23 of the Florida Constitution. (Doc. 1, pg. 4, ¶1). There is no authority similar to 42 U.S.C. § 1983, in the federal context, creating a civil cause of action for monetary relief under Florida's Constitution. *See Youngblood, etc., et al. v. Florida Department of Health, etc., et al.*, 2007 U.S. App. LEXIS 7495, n.4 (11th Cir. 2007) (quoting *Resha v. Tucker*, 670 So.2d 56, 58-59 (Fla. 1996)). In *Resha*, the Florida Supreme Court expressly held that a violation of Article I, Section 23 of the Florida Constitution does not give rise to a cause of action for money damages. *Resha*, 670 So. 2d at 57. There is no common law duty of care imposed upon an individual under the Florida Constitution, and thus, no action for money damages exists. *Nash-Tessler v. City of N. Bay Vill.*, 2003 U.S. Dist. LEXIS 17616 (S.D. Fla. 2003). Where Florida law does not recognize a cause of action for monetary damages based on alleged violation of the Florida Constitution, Count V of the Plaintiffs' Complaint

is subject to dismissal with prejudice as a matter of law.

## CONCLUSION

The Motion to Dismiss as to Defendant Indian River County Sheriff's Office should be granted.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Motion to Dismiss was sent via Clerk's CM/ECF electronic filing system this 12th day of April, 2013 to all counsel of record.

PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
*Attorneys for Indian River County Sheriff's Office*
2455 East Sunrise Boulevard, Suite 1216
Fort Lauderdale, Florida 33304
Telephone (954) 462-3200
Telecopier (954) 462-3861
E-mail: bruce@purdylaw.com


BY      ***s/Bruce W. Jolly***
        BRUCE W. JOLLY
        Florida Bar No. 203637