UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION
CASE NO.: 2:12-cv-14462/JEM

Toni Foudy,
Shaun Foudy,

       Plaintiffs,

**JURY TRIAL DEMANDED UNDER FRCP 38(b)**

v.

Saint Lucie County Sheriff Mascara, in his official capacity,
Indian River County Sheriff Loar, in his official capacity,
Gerald M. Bailey, in his individual capacity as
the Florida Department of Law Enforcement Commissioner,
Julie L. Jones, in her individual capacity as the
Executive Director of the Department of Highway
Safety and Motor Vehicles,
Sheriff Ken J. Mascara, in his individual capacity,
Sheriff Deryl Loar, in his individual capacity,
Christopher Gordineer, Individually,
Michael Muller, Individually,
Leland Squires, Individually,
David Abbott, Individually,
Sean Freeman, Individually,
Ronald Seraphin, Individually,
David Snow, Individually,
Matthew Kirchner, Individually,
Mark Sarvis, Individually,
Andrew Bolonka, Individually,
Shelia Grandison, Individually,
Dave Jones, Individually,
David Smith, Individually,
Vincent Bonagura, Individually,
Charla Harper, Individually,
Michelle Hernandez, Individually,
Paul Hutchinson, Individually,
William Miller, Individually,
Craig Ortman, Individually,
William Radke, Individually,
Brian Scribner, Individually,
Joseph Trevisol, Individually,
James DeFonzo, Individually,
Troy Hetzer, Individually,
Karen Stephens, Individually,
Michael White, Individually,

Brett Wilkes, Individually,
David Blatchford, Individually,
John Brady, Individually,
Deron Brown, Individually,
Kevin Carter, Individually,
Supreet Cheema, Individually,
Jeffery Cogswell, Individually,
Robert Funk, Individually,
Richard Green, Individually,
Thomas Johnson, Individually,
David Leigh, Individually,
Claylan Mangrum, Individually,
Todd Meslin, Individually,
Edward Oxley, Individually,
Michael Sheelar, Individually,
Randy Tucker, Individually,
Carl Ward, Individually,
John Wise, Individually,
Matthew Woods, Individually,
Lasolomon Archie, Individually,
Dennis Bernas, Individually,
Marie Brazas, Individually,
Mark Colangelo, Individually,
Alexander Feoloa, Individually,
Joseph Guertin, Individually,
Frantz Guerrier, Individually,
Byron Harbin, Individually,
Grant King, Individually,
Jeffery Ledlow, Individually,
Tad LeRoy, Individually,
Paul McNesky, Individually,
William Mittwede, Individually,
Michael Monahan, Individually,
Troy Norman, Individually,
John Parow, Individually,
Paul Pearson, Individually,
Frank Pellegrini, Individually,
Jeff Schoner, Individually,
Jeffery Serafini, Individually,
Cheryl Siel, Individually,
Paul Taylor, Individually,
Scott Wells, Individually,
Ronald Wentz, Individually,
Cathy Witaker, Individually,
Fred Wilson, Individually,
Suzanne Woodard, Individually,

Jason Cannon, Individually,
William Cooke, Individually,
James Gettings, Individually,
Adriano Krecic, Individually,
Cory Speicker, Individually,
Heather Yonderly, Individually,
David Bailey, Individually,
Eric Carlson, Individually,
Greg Long, Individually,
John Finnegan, Individually,
Michael Pierce, Individually,
Rebecca Hurley, Individually,
Terri Birtel, Individually,
Shaveldra Jenkins, Individually,
Paul Button, Individually,
Andrew Bartucelli, Individually,
Ismael Hau, Individually,
Brian Reimsnyder, Individually,
Roderick Smith, Individually,
Heath Higman, Individually,
Ciro Perrone, Individually,
Randal Fornes, Individually,
Chris Rodriguez, Individually,
John Cronenberg, Individually,
John Carter, Individually,
David Wright, Individually,
Scott Prouty, Individually,
Jeff Ledlow, Individually,
ENTITY DOES (1-20),
JANE and JOHN DOES (1-150),
FLORIDA DEPARTMENT OF
LAW ENFORCEMENT DOES (1-30), and
DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR VEHICLES DOES (1-30).

          Defendants.

_____/

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs, TONI FOUDY and SHAUN FOUDY, by and through undersigned counsel, file their

First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1) and hereby states and alleges as

follows:

## NATURE OF PLAINTIFFS' CLAIMS

1. This is an action for injunctive relief and money damages under 42 U.S.C. § 1983, the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§ 2721-2725 ("DPPA"), the Fourth Amendment, the Fourteenth Amendment, and other protections afforded by the United States Bill of Rights and state laws to recover damages for Defendants' disregard and invasion of Plaintiffs' constitutionally protected right to privacy. Specifically, in 1993, the United States Congress, recognizing that law enforcement personnel, amongst others, have the ability to access any person's private information, especially the information retained by States in connection with a driver's license, passed the Driver's Privacy Protection Act of 1994 to safeguard that information. In addition, the state of Florida is one of the few states in this country that has an express right of privacy in its constitution to protect against governmental intrusion. Fla. Const. Art. I. § 23.

2. This case involves the invasion of privacy and illegal searches of Plaintiffs' Toni Foudy and Shaun Foudy and her family members by more than seven-hundred (700) queries by Florida law enforcement officers between July 1, 2005 and June 28, 2011, and probably more times prior to and after that time period, without any legitimate purpose and as a result not only violated DPPA, 42 U.S.C. § 1983 and state law, but have also damaged each of the Foudy's lives as a result of the violations. Plaintiffs' are entitled to a determination that their rights have been violated, an order enjoining further violations, and monetary damages for the invasions of their privacy.

3. Specifically, law enforcement personnel in the state of Florida illegally viewed Plaintiff Toni Foudy's private, personal, and confidential driver's license information more than five-hundred-and-fifty (550) times without a legitimate purpose. In addition, law

enforcement personnel in the state of Florida illegally viewed Plaintiff Shaun Foudy's' private, personal, and confidential driver's license information nearly one-hundred (100) times without a legitimate purpose. These law enforcement personnel viewed Shaun and Toni Foudy's private information nearly seven-hundred (700) times from the period of July 1, 2005 and June 28, 2011; presumably more have viewed it during and after this time, however, due to the state of Florida's procedures for investigating such matters Plaintiffs' do not know the full extent of the violations to date. Furthermore, these law enforcement personnel also further decided to view the immediate members of Toni Foudy's family, based on information and belief, solely due to the fact that they were related to her, nearly two-hundred (200) times. Each unauthorized access of her private information, made while acting under the color of state law, violated Toni and Shaun Foudy's federal civil rights and constituted behavior prohibited by federal statutes, Florida statutes, common law, and agency and departmental regulations prohibiting some or all of the conduct engaged in by Defendants in this case.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. §§ 1983 and 1988, the Driver's Privacy Protection Act 18 U.S.C. § 2721 et seq. and 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5. The amount in controversy exceeds $75,000.00, including interests and costs.

6. All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute § 768.

## THE PARTIES

7.  Plaintiff Toni Foudy, at all relevant times, is a resident of the State of Florida and citizen of the United States of America.

8.  Plaintiff Shaun Foudy, at all relevant times, is a resident of the State of Florida and citizen of the United States of America.

9.  Defendant Indian River County Sheriff Loar ("IRCSO" or the Sheriff in his official capacity), a public entity, is a County and political subdivision of the State of Florida duly organized and existing under the laws of the State of Florida, which can be sued under Fla. Stat. § 768.28.

10. Defendant Saint Lucie County Sheriff Mascara ("SLCSO" or the Sheriff in his official capacity), a public entity, is a County and political subdivision of the State of Florida duly organized and existing under the laws of the State of Florida, which can be sued under Fla. Stat. § 768.28.

11. Defendant Entity Does (1-20) are various cities, counties, municipalities and other entities located in Florida, which can be sued under Fla. Stat. § 768.28. or other statutes, and federal departments and agencies, which may be sued under 28 U.S.C. § 1346 or other statutes.

12. Plaintiffs' will refer to the entities named in paragraphs 9-11 above collectively as the "Defendant Entities" or "Entity Defendants."

13. Defendant Christopher Gordineer, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

14. Defendant Michael Muller, upon information and belief, was, at all times relevant herein,

a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

15. Defendant Leland Squires, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

16. Defendant David Abbott, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

17. Defendant Sean Freeman upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

18. Defendant Ronald Seraphin, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

19. Defendant David Snow, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

20. Defendant Matthew Kirchner, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

21. Defendant Mark Sarvis, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

22. Defendant Andrew Bolonka, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

23. Defendant Shelia Grandison, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

24. Defendant Dave Jones, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

25. Defendant David Smith, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the

Saint Lucie County Sheriff Mascara.

26. Defendant Vincent Bonagura, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

27. Defendant Charla Harper, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

28. Defendant Michelle Hernandez, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

29. Defendant Paul Hutchinson, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

30. Defendant William Miller, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

31. Defendant Craig Ortman, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and

acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

32. Defendant William Radke, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

33. Defendant Brian Scribner, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

34. Defendant Joseph Trevisol, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

35. Defendant James DeFonzo, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

36. Defendant Troy Hetzer, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

37. Defendant Karen Stephens, upon information and belief, was, at all times relevant herein,

a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

38. Defendant Michael White, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

39. Defendant Brett Wilkes, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

40. Defendant David Blatchford, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

41. Defendant John Brady, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

42. Defendant Deron Brown, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

43. Defendant Kevin Carter, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

44. Defendant Supreet Cheema, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

45. Defendant Jeffery Cogswell, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

46. Defendant Robert Funk, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

47. Defendant Richard Green, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

48. Defendant Thomas Johnson, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of

the Saint Lucie County Sheriff Mascara.

49. Defendant David Leigh, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

50. Defendant Claylan Mangrum, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

51. Defendant Todd Meslin, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

52. Defendant Edward Oxley, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

53. Defendant Michael Sheelar, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

54. Defendant Randy Tucker, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and

acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

55. Defendant Carl Ward, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

56. Defendant John Wise, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

57. Defendant Matthew Woods, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

58. Defendant Lasolomon Archie, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

59. Defendant Dennis Bernas, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

60. Defendant Marie Brazas, upon information and belief, was, at all times relevant herein, a

resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

61. Defendant Mark Colangelo, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

62. Defendant Alexander Feoloa, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

63. Defendant Joseph Guertin, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

64. Defendant Frantz Guerrier, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

65. Defendant Byron Harbin, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

66. Defendant Grant King, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

67. Defendant Jeffery Ledlow, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

68. Defendant Tad LeRoy, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

69. Defendant Paul McNesky, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

70. Defendant William Mittwede, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

71. Defendant Michael Monahan, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of

the Saint Lucie County Sheriff Mascara.

72. Defendant Troy Norman, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

73. Defendant John Parow, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

74. Defendant Paul Pearson, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

75. Defendant Frank Pellegrini, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

76. Defendant Jeff Schoner, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

77. Defendant Jeffery Serafini, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and

acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

78. Defendant Cheryl Siel, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

79. Defendant Paul Taylor, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

80. Defendant Scott Wells, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

81. Defendant Ronald Wentz, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

82. Defendant Cathy Witaker, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

83. Defendant Fred Wilson, upon information and belief, was, at all times relevant herein, a

resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

84. Defendant Suzanne Woodard, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

85. Defendant Jason Cannon, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

86. Defendant William Cooke, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

87. Defendant James Gettings, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

88. Defendant Adriano Krecic, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

89. Defendant Cory Speicker, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

90. Defendant Heather Yonderly, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a deputy, employee, agent, or representative of the Saint Lucie County Sheriff Mascara.

91. Defendant David Bailey, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Sergeant of the Indian River County Sheriff Loar.

92. Defendant Eric Carlson, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

93. Defendant Greg Long, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

94. Defendant John Finnegan, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Detective of the Indian River County Sheriff Loar.

95. Defendant Michael Pierce, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Sergeant of the Indian River County Sheriff Loar.

96. Defendant Rebecca Hurley, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in her individual capacity as a Deputy of the Indian River County Sheriff Loar.

97. Defendant Terri Birtel, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in her individual capacity as a Deputy of the Indian River County Sheriff Loar.

98. Defendant Shaveldra Jenkins, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in her individual capacity as a Records Specialist of the Indian River County Sheriff Loar.

99. Defendant Paul Button, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a PSD of the Indian River County Sheriff Loar.

100. Defendant Andrew Bartucelli, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

101. Defendant Ismael Hau, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

102. Defendant Brian Reimsnyder, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

103. Defendant Roderick Smith, upon information and belief, was, at all times relevant

herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

104. Defendant Heath Higman, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

105. Defendant Ciro Perrone, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

106. Defendant Randal Fornes, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

107. Defendant John Cronenberg, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Sergeant of the Indian River County Sheriff Loar.

108. Defendant Chris Rodriguez, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

109. Defendant John Carter, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

110. Defendant David Wright, upon information and belief, was, at all times relevant herein, a resident of the State of Florida and a citizen of the United States, duly appointed and

acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

111.  Defendant Scott Prouty, upon information and belief, was, at all times relevant herein, a

resident of the State of Florida and a citizen of the United States, duly appointed and

acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.

112.  Defendant Jeff Ledlow, upon information and belief, was, at all times relevant herein, a

resident of the State of Florida and a citizen of the United States, duly appointed and

acting in his individual capacity as a Deputy of the Indian River County Sheriff Loar.


113.       Defendant Jane and John Does (1-150), upon information and belief, were, at all

times material hereto, residents of the state of Florida and citizens of the United Sates,

duly appointed and acting in their individual capacities as law enforcement supervisors,

officers, or employees of the Defendant Entities or other federal, state, county or

municipal entities in Florida.

114.       Plaintiffs' will refer to the Individual Defendants (with the exception of the

Defendants Jones, Bailey and the "Supervisor Defendants"), including Jane and John

Does collectively as the "Defendant Law Enforcement Personnel," "Individual

Defendants," or "Defendant Individuals."

115.       Plaintiffs' will refer to the Defendants with supervisory authority over Individual

Defendants, including any Jane and John Does with such supervisory authority,

collectively as the "Supervisor Defendants" or "Defendant Supervisors."

116.       Defendant Gerald M. Bailey ("Bailey"), upon information and belief, was, at all

times relevant herein, a resident of the State of Florida and a citizen of the United States,

duly appointed and acting in his individual capacity as the Florida Department of Law

Enforcement ("FDLE") Commissioner.

117.    Defendant FDLE DOES (1-30), upon information and belief, were, at all times,
material herein, citizens of the United States and residents of the State of Florida, duly
appointed and acting in their individual capacities as officers, supervisors, employees,
staff, employees, independent contractors or agents of the FDLE.

118.    Defendant Julie L. Jones ("Jones") upon information and belief, was, at all times
relevant herein, a resident of the State of Florida and a citizen of the United States, duly
appointed and acting in her individual capacity as the Executive Director of the
Department of Highway Safety and Motor Vehicles ("DHSMV").

119.    Defendant DHSMV DOES (1-30), upon information and belief, were, at all times,
material herein, citizens of the United States and residents of the State of Florida, duly
appointed and acting in their individual capacities as officers, supervisors, employees,
staff, employees, independent contractors or agents of the DHSMV.

120.    Plaintiffs will refer to officers, supervisors, employees, staff, employees,
independent contractors or agents of the DHSMV and the FDLE who created, installed,
monitored, regulated, coded, enforced, supervised, maintained, oversaw, updated, or
otherwise worked on the D.A.V.I.D. system, which contained Plaintiffs' private driver's
license information as "DHSMV/ FDLE Database Does."

121.  Defendant KEN J. MASCARA, upon information and belief, was, at all times material
herein, a citizen of the United States and a resident of the State of Florida, duly appointed
and acting in his individual capacity as Sheriff of Saint Lucie County.

122.  Defendant DERYL LOAR, upon information and belief, was, at all times material
herein, a citizen of the United States and a resident of the State of Florida, duly appointed

and acting in his individual capacity as Sheriff of Indian River County.

## FACTUAL ALLEGATIONS

**I.    Toni Foudy Was Initially Proud to Be Called A Deputy Until It Turned Into A Nightmare**

123.  In 2005, Toni Foudy attended the Indian River Police Academy and graduated with a 99.3% GPA.

124.  She was proud to have achieved her dream of becoming a deputy.

125.  While at the academy she was hired by St. Lucie County Sheriff's Office, where she was employed for approximately thirteen months.

126.  During her time at SLCSO, Toni Foudy started receiving treatment that was distinctively different than the manner in which the male deputies were treated from fellow deputies and supervisors.

127.  On May 14, 2006, Toni and Shaun Foudy were married.

128.  During her employment, Toni Foudy was accused of being untruthful about immediately reporting the scratch to her patrol car and getting her patrol car stuck in a civilian's driveway.

129.  During the internal affairs investigation, Lieutenant Dennis Bernas informed Toni Foudy that she was being "targeted" and that "she better resign or that she would never work in law enforcement again."

130.  On or about August 30, 2006, Toni Foudy, terrified that her dream of being a deputy was in jeopardy, resigned.

131.  Soon after her resignation, Plaintif Toni Foudy applied to other law enforcement positions, and was denied employment as a result of her resignation with SLCSO.

132.  Puzzled, Toni Foudy contacted FDLE and was informed that SLCSO had reported that she had "Resigned Amid Investigation of Moral Character Violations."

133.  Toni Foudy was devastated since the "moral character" violation at issue involved a scratch on a patrol car that and a driveway incident that was reported soon thereafter.

134.  Thus, Toni Foudy, in attempt to put a bad experience behind her, decided to let go of her attempts to re-enter the law enforcement field and helping the community, and decided to start a family with her husband.

135.  On April 14, 2009, Toni Foudy began employment at Walt Disney as a "Snow White" character.

136.  On or about July 27, 2009, Toni Foudy applied to be a deputy with the Indian River County Sheriff Loar.

137.  Understanding that the information contained in her FDLE would be an issue, Toni Foudy wrote a letter to Sheriff Deryl Loar, requesting an opportunity to explain the circumstances that had materialized at SLCSO.

138.  Sheriff Loar agreed to a meeting, where he, Undersheriff Tim Elder and Toni Foudy were present.

139.  Toni Foudy was informed after the meeting that she would be hired as a Reserved Deputy, and she was excited at the offer and promptly accepted.

140.  Prior to formally beginning her employment at IRCSO as a Reserved Deputy, Toni Foudy was contacted by IRCSO and informed that she was formally being hired as a full-time Deputy Sheriff.

141.  As a law enforcement officer, Toni Foudy was obligated to inform Sheriff Loar that she

was a Walt Disney character and entertainer on a part time basis.

142.  Sheriff Loar stated that he needed to know the nature of the entertainment job.

143.  Toni Fudy informed the Sheriff that she was "Snow White" and that the position

needed to remain confidential due to her contract with Walt Disney and a Confidentiality

Agreement.

144.  Sheriff Loar told her that he understood and that the information would remain

confidential.

145.  However, almost immediately, IRCSO Lieutenant Derrill Mullinax and other deputies

began exclaiming, "hey it's Snow White" and "where are your dwarves," whenever he

was in Toni Foudy's presence.

146.  Toni Foudy was concerned that the Sheriff must have revealed her confidential

position.

147.  In addition, Toni Foudy almost immediately began having issues with a select group of

male deputies that told her that they did not agree with women working in law

enforcement, specifically Jeffrey Ledlow.

148.  Toni Foudy's IRCSO male zone partner stated that the agency "was never going to be

as good as the worst male cop," as she was being targeted for being female and no matter

how well she worked it would not matter.

149.  In October of 2010, Toni Foudy was subsequently informed by a deputy that the

IRCSO males were at a hostage negotiation seminar with SLCSO male law enforcement

personnel and were discussing Toni Foudy.

150.  The males were allegedly discussing her work at IRCSO, SLCSO, and their personal

opinions of her and appeared to be spreading egregious rumors in the process.

151.  Toni Foudy, immediately thereafter, was issued anti-anxiety medication by her physician as a result of her co-workers insulting and demeaning behavior.

152.  A short time later, Toni Foudy was informed that the IRCSO was investigating her after a police service call, in which Toni Foudy was accused of kicking and hitting a male suspect.

153.  The alleged battery was not reported by the suspect, but was reported by probationary deputy sheriff, Christopher Reeve.

154.  Toni Foudy was later informed by another IRCSO Corporal that Sergeant White "had found an opportunity to screw you and ran with it."

155.  Based on information and belief, Sergeant White and probationary deputy Christopher Reeve were at the gym, when probationary deputy Christopher Reeve informed Sergeant White of the incident with the suspect, and Sergeant White, based on information and belief, urged probationary deputy Christopher Reeve to report the exaggerated incident.

156.  In addition, Toni Foudy received a phone call from another IRCSO Sergeant who told her that she was being targeted.

157.  Toni was later called into the IRCSO and interviewed for the IA investigation.

158.  During the IA interview, Toni Foudy informed the investigator that she was in a high-risk situation with the suspect and that the suspect was kicking and resisting on the edge of a stairwell, therefore she was compelled to slap him to regain control for officer safety purposes. She was told that the IRCSO would inform her of the IA outcome.

159.  When she was called into the IRCSO to be informed of the outcome, K9 Sergeant Patrick White was seated outside of the IA office.

160. IRCSO Captain Don Smith and Commander Mike Dean were waiting in the office. Upon arriving, Toni Foudy was told that she was being terminated.

**II.   Florida Law Enforcement Officers Viewed Toni Foudy's and Shaun Foudy's Private, Legally Protected Information Outside of Any Official Investigation or for a Legal Purpose Nearly 600 Times and Violated Her Immediate Family's Right to Privacy Nearly 200 Times**

161.   Law enforcement officers began looking up Toni Foudy and Shaun Foudy's private information on the D.A.V.I.D system as early as July 1, 2005, if not earlier.

162.   Both Toni and Shaun Foudy began receiving harassing e-mails in 2006 from an unknown source.

163.   In October 2009, Shaun Foudy, seriously disturbed by these e-mails researched the Internet Protocol (IP) address of the sender and it was traced back to an SLCSO Jail booking terminal.

164.   Shaun Foudy, whose only connection with the SLCSO was that his wife, Toni Foudy, was employed there at one time, was stunned to find that a law enforcement agent was likely harassing him as well as his family.

165.   Soon after the receipt of the initial harassing e-mails and until 2009, patrol cars would drive by the Foudy's home and sound their sirens approximately five days a week, for no apparent reason, but to harass.

166.   On or about November 2, 2006, the Foudy's learned that they were expecting their first child.

167.    About this same time, Shaun Foudy began receiving harassing text messages in addition to the e-mails and the constant patrol cars driving by his home and activating the sirens directly in front of his residence.

168.   As a result of the constant harassment by law enforcement agents, Toni Foudy

suffered pregnancy related complications and was hospitalized twice for premature labor.

169.   The Foudy's were forced to start the process of relocating in the hopes of stopping the harassment so that Toni Foudy could have the least amount of stress throughout her pregnancy and her son's arrival.

170.   The Foudy's son was born on June 30th 2007.

171.   At the time that Toni Foudy was giving birth at the hospital a law enforcement personnel at the SLCSO accessed her private personal information, and based on information and belief, for a non-law enforcement purpose.

172.   During the Christmas holiday season of 2007, Shaun Foudy, while shopping with his new-born son, was approached by SLCSO Deputy K. Breech and his significant other at a Border's Bookstore at Jensen Beach Mall and asked Shaun Foudy if he was certain that his new-born son was his.

173.   The Foudy's manage to finally complete the short-sale in February 2009.

174.   The Foudy's had to provide all liquid assets for the short sale in order to relocate promptly. This caused Shaun Foudy to become further depressed.

175.   Toni Foudy had to file banktuptcy as a result and destroyed her credit score of 791.

176.   In March 2010, the Foudy's moved again, twice within a thirteen-month period due to harassment.

177.   The second move was that in addition to the preceding acts of harassment, e-mails, texts, constant sirens, and harassment by deputies, a black SUV was continuously and consistently slowly driving by the Foudy's new residence, which was on a quiet, seldom traveled road, and then speeding away fast, screeching its tires in the process.

178.   At one time, Plaintiff Toni Foudy was able to follow the black SUV upon it passing by

her home.

179.   Toni Foudy saw the black SUV just as it pulled into a garage approximately four blocks away from her home. Although Toni Foudy was unable to see the tag number, she did take note of the address, it was a residence located on the 300 block of S.W. Daggert Ave.

180.   On or about April 7, 2010, the Foudy's dog and a neighbor's dog killed three goats. The Saint Lucie Animal Control was contacted.

181.   SLCSO agriculture Deputy Rick Stuhr and animal control responded. The Foudy's were informed that they had to receive a citation since the neighbor's also received a citation.

182.   Shaun Foudy paid the fine. He later learned that the neighbor did not have to pay a fine although she was issued a citation, since she was informed by Animal Control Officer, to simply contact "this number" the following day an that they would "take care of it."

183.   In mid-2012, Shaun Foudy was contacted by his bank and informed that there was a security breach to his account and that there were unauthorized charges on his debit card. The perpetrator was never identified.

184.  Law enforcement personnel viewed the Foudy's private and highly-restricted personal information via the D.A.V.I.D system, including their home address, color photograph or image, social security number, date of birth, state of birth, detailed vehicle registration information and description, prior and current home and mailing addresses, driving record, insurance carrier, emergency contacts and those contacts private and highly-restricted personal information.

185. The D.A.V.I.D system, to which access is limited and approved by the DHSMV, under the direction of Jones, and the FDLE, under the direction of Bailey, permits law enforcement personnel to search Florida driver licenses, identification cards, and license plates (tags) amongst other private and highly-restricted personal information.

186. The DHSMV and DHSMV Does, under the direction of Defendant Jones, maintained and updated the database that includes Plaintiffs' driver's license information.

187. The FDLE and FDLE Does, under the direction of Defendant Bailey, and the DHSMV, under the direction of Defendant Jones, provided access to the database that includes Plaintiffs' driver's license information.

188. The FDLE and FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of Defendant Jones, had the ability to ascertain that driver's license information, including Plaintiffs', was being accessed on numerous occasions, by multiple law enforcement personnel from a variety of law enforcement agencies.

189. The FDLE and FDLE Does, under the direction of Defendant Bailey, and the DHSMV and DHSMV Does, under the direction of Defendant Jones, had the ability to prevent unauthorized access to Plaintiffs' driver's license information.

190. The FDLE and the FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of Defendant Jones, failed to prevent unauthorized access to the database including access to Plaintiffs' driver's license information.

191. The FDLE and the FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does knowingly authorized, directed, ratified, approved,

acquiesced in, committed or participated in the disclosure of Plaintiffs' driver's license information.

192.  The policy of the State of Florida is to uphold the provisions of the law, both state and federal, and to protect and safeguard the privacy rights of Florida's citizens and inhabitants, including its drivers' privacy rights, and including those rights as are required to be protected by federal law, and in particular, it is the policy of the State of Florida to comply with the provisions and requirements of the DPPA, 18 U.S.C. § 2721, et. seq.

193.  The FDLE and the FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of Defendant Jones, knowingly disclosed Plaintiffs' and others' driver's license information and violated state policy by devising and implementing a database that failed atrociously to uphold the privacy rights of Toni and Shaun Foudy and others similarly situated as protected by the DPPA, exposing the Foudy's information and others' to impermissible and knowing accesses by various persons, including the Defendants in this lawsuit, constituting a knowing disclosure of her information within the meaning of the DPPA.

194.  The FDLE and the FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of Defendant Jones, knowingly implemented a database, and a method for using and misusing that database, that both permitted and encouraged, through the nature and monitoring of the system, accesses by police officers, state employees, and others that failed to comply with state policy of protecting privacy rights and complying with the DPPA.

195.  The system knowingly implemented by the FDLE and the FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does, under the

direction of Defendant Jones, failed to set rules for protecting the privacy rights, and

permitted, and on information and belief, still permits, and in some instances promotes,

the accessing of the database from computers that are located in areas that are accessible

to any individual, permitting continuous access to the database from a dedicated

computer that doe not require logging in by any individual, including persons not

authorized to access the database, and the accessing of the system by persons without any

accountability or even in some instances without the ability to trace the person who made

the access; so that effective monitoring of the system is difficult if not impossible under

the system as implemented by the FDLE and the FDLE Does, under the direction of

Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of

Defendant Jones, who deliberately emphasized and favored the convenience of the

system by users at the expense of protecting the privacy rights of the persons in the

database.

196. Upon information and belief, the FDLE and the FDLE Does, under the direction of

Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of

Defendant Jones, actually knew that law enforcement officers were accessing the

databases for impermissible purposes, including viewing Plaintiffs' driver's license

information, and acquiesced, facilitated, approved or simply ignored the conduct.

197. Even if the FDLE and the FDLE Does, under the direction of Defendant Bailey, and the

DHSMV and the DHSMV Does, under the direction of Defendant Jones, had no actual

knowledge of the impermissible uses of the databases they oversaw, upon information

and belief, they were reckless in their supervision of their subordinates who did operate

the database.

198.  Upon information and belief, the FDLE and the FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of Defendant Jones, were grossly negligent in supervising their subordinates who operated the databases.

199.  In April 2011, while researching agency records and preparing for her ongoing review of the situation with IRCSO, Toni Foudy requested her D.A.V.I.D records from the DHSMV. Toni Foudy received her results in July 2011.

200.  Toni Foudy was shocked and physically sickened to learn that her private and restricted information was accessed approximately five-hundred-and-fifty (550) times by IRCSO and SLCSO.

201.  Toni Foudy's information was accessed approximately four-hundred-and-fifty-six (456) times by SLCSO between July 1, 2005 and August 1, 2011.

202.  Toni Foudy's information was accessed approximately one-hundred-and-twenty (120) times by IRCSO between April 7, 2008 and August 1, 2011.

203.  Shaun Foudy suspected that his information had also been accessed due to the fact that he was harassed by offices and requested his D.A.V.I.D records from DHSMV in August 2011.

204.  Shaun Foudy was visibly shaken to discover that his records were accessed nearly one-hundred (100) times by IRCSO and SCLSO between July 1, 2005 and August 1, 2011.

205.  Toni Foudy also had her family members inquire in to whether their information was accessed by SLCSO and IRCSO, the result was that their information was accessed nearly two-hundred (200) times between July 1, 2005 and August 1, 2011.

206.  On information and belief, most of the Individual Defendants used Toni Foudy and

Shaun Foudy's name and not their license plate number to look up their private and highly restricted personal information.

207.  Both of the named Defendant Entities, SLCSO and IRCSO, appeared to have completed their internal investigation.

208.  SLCSO stated that a total of seventy-nine (79) of its law enforcement personnel accessed Toni Foudy's personnel information between July 1, 2005 and August 1, 2011. Out of the seventy-nine (79) named personnel,  according to the Sheriff's Office, five (5) are no longer employed at the SLCSO, two (2) are not known to the SCLSO, and one (1) was a temporarily assigned officer who is no longer with the agency.

209.  SLCSO has stated that the named Individual Defendant personnel, Christopher Gordineer, Michael Muller Leland Squires, David Abbott, Sean Freeman Ronald Seraphin, David Snow, Matthew Kirchner Mark Sarvis, Andrew Bolonka, Shelia Grandison, Dave Jones, David Smith, Vincent Bonagura Charla Harper, Michelle Hernandez, Paul Hutchinson, William Miller, Craig Ortman, William Radke, Brian Scribner Joseph Trevisol, James DeFonzo, Troy Hetzer, Karen Stephens, Michael White, Brett Wilkes, David Blatchford, John Brady, Deron Brown, Kevin Carter, Supreet Cheema, Jeffery Cogswell, Robert Funk, Richard Green, Thomas Johnson, David Leigh, Claylan Mangrum, Todd Meslin, Edward Oxley, Michael Sheelar, Randy Tucker, Carl Ward, John Wise, Matthew Woods, Lasolomon Archie, Dennis Bernas, Marie Brazas, Mark Colangelo, Alexander Feoloa, Joseph Guertin, Frantz Guerrier, Byron Harbin, Grant King, Jeffery Ledlow, Tad LeRoy, Paul McNesky, William Mittwede, Michael Monahan, Troy Norman, John Parow, Paul Pearson, Frank Pellegrini, Jeff Schoner, Jeffery Serafini, Cheryl Siel, Paul Taylor, Scott Wells, Ronald Wentz, Cathy Witaker,

Fred Wilson, Suzanne Woodard, Jason Cannon, William Cooke, James Gettings, Adriano Krecic, Cory Speicker, and Heather Yonderly have accessed Toni Foudy's private and restricted driver's license information.

210. SLCSO has concluded that most of its Individual Defendant law enforcement personnel did not have a law enforcement related reason for each access of Toni Foudy's private and restricted driver's license information.

211. Based on information and belief, the law enforcement personnel listed on the internal investigation report by SLCSO is incomplete in that in some instances it fails to list the total number of times an Individual Defendant accessed Toni Foudy's information.

212. Some of the law enforcement personnel of SLCSO, Mark Sarvis, Vincent Bonagura, Joseph Trevisol, Michael White, Kevin Carter, Supreet Cheema, John Wise, Joseph Guertin, Paul McNesky, Jeffery Serafini, Jason Cannon, William Cooke, James Gettings, Adriano Krecic, Cory Speicker, Heather Yonderly, state that some of the times that they accessed Toni Foudy's information is direct result of a "BOLO."

213. A BOLO, is an all-points bulletin (APB) broadcast issued from a law enforcement agency containing information about a wanted suspect who is to be arrested or a person of interest, for whom law enforcement officers are to look.

214. Based on information and belief, no BOLO's were ever issued in regards to Toni Foudy.

215. Defendant Vincent Bonagura was disciplined for accessing Toni Foudy's information. At the time the D.A.V.I.D. audit was performed at the behest of Toni Foudy, the results showed that Vincent Bonagura had accessed her eight times.

216. Lieutenant Hostetler stated that Defendant Vincent Bonagura informed him that three

of those times were the results of a BOLO, two of those times he accessed her tag for a valid reason, which was not articulated, and the last three times were not for a law enforcement purpose.

217. Lieutenant Hostetler further stated that Defendant Vincent Bonagura believed that he could look up people in the media.

218. Lieutenant Hostetler provided Vincent Bonagura with a direct order not to use DAVID for an unlawful purpose on September 26, 2011. Less than 45 days later, Defendant Vincent Bonagura accessed another Florida driver's license holder private personal information without a law enforcement purpose.

219. Based on information and belief, Vincent Bonagura may have accessed several other persons private personal information for a non-law enforcement purpose.

220. Based on information and belief, the St. Lucie County Sheriff's Office should have monitored, prevented, and stopped the unauthorized access to Toni Foudy's private information by Vincent Bonagura and any other persons whose information was accessed without a permissible law enforcement purpose.

221. Pursuant to Florida Statute § 817.5681, Toni Foudy is entitled to be informed of a breach to her private personal information without any unreasonable delay.

222. SLCSO law enforcement personnel has been continuously accessing Toni Foudy's information between 2005 and 2011, and at no time prior to June 27, 2011, was Toni Foudy informed by the SLCSO, DHSMV, or FDLE that her private highly restricted driver's license information was improperly accessed.

223. Toni Foudy only knew that law enforcement personnel had unlawfully accessed her information once she requested an audit of her D.A.V.I.D. records from the DHSMV.

224.  Based on information and belief, the SCLSO did not provide Toni Foudy's counsel a
      complete list of the individual law enforcement personnel that accessed Toni Foudy's
      information and all documents and things related to the internal affairs investigation.

225.  The SLCSO did not provide the names of the law enforcement personnel that viewed
      the private and highly restricted personal information of Shaun Foudy.

226.  The SLCSO did not provide the number of times that each law enforcement personnel
      viewed the private and highly restricted personal information of Shaun Foudy.

227.  Pursuant to Florida Statute § 817.5681, Shaun Foudy is entitled to be informed of a
      breach to his private personal information without any unreasonable delay.

228.  The IRCSO's internal investigation of its law enforcement personnel did not reflect the
      one-hundred-and-twenty (120) queries that DHSMV reflected on its audit.

229.  The IRCSO concluded that Defendants Rebecca Hurley, Andrew Bartucelli, Ismael
      Hau, Eric Carlson, Greg Long, and Heath Higman violated regulations by accessing Toni
      Foudy's private personal drivers license information.

230.  Defendants Rebecca Hurley, Andrew Bartucelli, and Ismael Hau informed internal
      affairs investigators that they accessed Toni Foudy's personal private information
      because they had heard "rumors" about her from SLCSO.

231.  The IRCSO concluded that Defendants Detective John Finnegan, Deputy Brian
      Reimsnyder,  Deputy Roderick Smith, and Deputy Ciro Perrone did not violate any
      regulations by accessing Toni Foudy's private personal drivers license information since
      the Defendants could not "recall" why they had ran her information.

232.  The IRCSO concluded that Defendants Michael Pierce, Randal Fornes, Chris
      Rodriguez, John Cronenberg, John Carter, David Wright, Scott Prouty and Jeff Ledlow

did not violate any regulations by accessing Toni Foudy's private personal drivers license information since the Defendants may have ran her since her vehicle was in the IRCSO parking lot.

233. Defendant David Wright resigned on or about December 11, 2012. Based on information Defendant Wright was under investigation for asking another agency to make a welfare check on a woman he met on a dating site. Based on information and belief, Defendant Wright lied to the other agency in order to have the officers contact the young lady.

234. Based on information and belief, David Wright improperly accessed the young lady's information via a law enforcement database.

235. The IRCSO concluded that Defendant David Bailey did not violate any regulations by accessing Toni Foudy's private personal drivers license information since the Defendant may have ran her since she was a new hire, to verify her driver's license, and to view her driver's license information.

236. Based on information and belief, the internal affairs investigator(s) for IRCSO did not attempt to verify or corroborate the statements made by the law enforcement personnel during the course of the internal affairs investigation regarding its law enforcement personnel.

237. Based on information and belief, the IRCSO did not provide a complete list of the individual law enforcement personnel that accessed Toni Foudy's information and all documents and things related to the internal affairs investigation.

238. The IRCSO did not provide the number of times that all law enforcement personnel viewed the private and highly restricted personal information of Toni Foudy.

239.  Pursuant to Florida Statute § 817.5681, Toni Foudy is entitled to be informed of a breach to her private personal information without any unreasonable delay

240.  On or about April 30, 2012, the IRCSO informed Shaun Foudy via written correspondence that there was not sufficient evidence to conclude that Defendants Sergeant David Bailey, Sergeant Michael Pierce, Detective John Finnegan, Deputy Eric Carlson, Deputy Greg Long, Deputy Rebecca Hurley, Deputy Terri Birtel, and Records Specialist Shaveldra Jenkins violated departmental rules, regulations, policies or procedures.

241.  The letter dated April 30, 2012, did not state that Defendants Sergeant David Bailey, Sergeant Michael Pierce, Detective John Finnegan, Deputy Eric Carlson, Deputy Greg Long, Deputy Rebecca Hurley, Deputy Terri Birtel, and Records Specialist Shaveldra had any of the narrow legitimate law enforcement purposes outlined under the DPPA, 18 U.S.C. §§ 2721-2725, for accessing Shaun Foudy's private personal driver's license information.

242.  In the prior internal affairs interview on August 4, 2011 regarding Toni Foudy, the IRCSO provided Deputy Rebecca Hurley a letter of counseling for improperly accessing Toni Foudy's private personal records.

243.  Based on information and belief, Deputy Rebecca Hurley is the same law enforcement personnel referenced in the April 30, 2012 letter by IRCSO to Shaun Foudy, stating that there was "not sufficient" information to conclude there was a violation of Shaun Foudy's rights.

244.  Based on information and belief, the IRCSO has failed to provide a complete list of the law enforcement personnel that accessed Shaun Foudy's private restricted driver's license

information without a legitimate purpose since 2005.

245.  In addition, based on information and belief, the IRCSO did not provide the number of times that a particular law enforcement personnel that viewed the private and highly restricted personal information of Shaun Foudy.

246.  Based on information and belief, the internal affairs investigator(s) for IRCSO did not attempt to verify or corroborate the statements made by the law enforcement personnel during the course of the investigation of its law enforcement personnel.

247.  Pursuant to Florida Statute § 817.5681, Shaun Foudy is entitled to be informed of a breach to his private personal information without any unreasonable delay.

248.  Based on information and belief, Toni Foudy's immediate family members did not continuously reside in the State of Florida at the time their information was accessed

249.  Based on information and belief, the private and highly restricted information of Toni Foudy's family was accessed due to their relationship with Toni Foudy.

250.  Pursuant to Florida Statute § 817.5681, Toni Foudy's family members were not informed that there was a breach or possible breach to their private personal driver's license information.

251.  The SLCSO has accessed Toni Foudy's family members information since 2005.

252.  The IRCSO has accessed Toni Foudy's family members information since 2006.

253. The remaining Individual Defendants', Jane and John Does, are not presently known, because the Defendant Entities have either not provided Plaintiffs with their identities or not provided sufficient information to determine if their law enforcement personnel's access to the database was unauthorized, despite Plaintiffs' requests. Plaintiffs anticipate that these Individual Defendants, Jane and John Does, will become known through

discovery.

254. The Supervisor Defendants are not presently known. Plaintiffs anticipate that the "Jane and John Doe" Supervisor Defendants who should have monitored, prevented and stopped the unauthorized access to Toni Foudy and Shaun Foudy's personal private information will become known through discovery.

255.  The remaining Entity Defendants, Entity Does, are not presently known because DHSMV has not provided Plaintiffs' with the result of its audit requests. Plaintiffs anticipate that this information will become known through discovery.

256. The login page to D.A.V.I.D system includes the following monition:

> All data contained within the DAVID system is sensitive and privileged information and shall be handled accordingly. To maintain the integrity of this information, the records will be accorded proper management and security, and will only be accessed and used by authorized personnel in accordance with state and federal law.
>
> Activity associated with any aspect of the DAVID system is subject to detailed monitoring and audits to protect against improper or unauthorized use. Unauthorized use includes, but is not limited to, queries not related to a legitimate business purpose, personal use, dissemination, sharing, copying, or passing of DAVID information to unauthorized users and could result in civil proceedings against the offending agency and or criminal proceedings against any user or other person involved. Violations or misuse may also subject the user and the user's agency to administrative sanctions and possible disciplinary action by their agency, and could result in DAVID access termination.
>
> Accessing the DAVID system by any individual or agency constitutes their consent to the monitoring of all activities, as well as consent to the suspension or termination of their access privileges during or following any audit that determines misuse of the system.

257. According to Florida Statutes Section 119.0712(2)(c): "[w]ithout the express consent of the person to whom such emergency contact information applies, the emergency contact

information contained in a motor vehicle record may be released only to law enforcement agencies for purposes of contacting those listed in the event of an emergency."

258. Furthermore, the Memorandum Of Understanding between DHSMV, FDLE and the law enforcement agency states that "[t]he Requesting Party must immediately notify the Providing Agency and the affected individual following the determination that personal information has been compromised by an unauthorized access, distribution, use, modification, or disclosure."

259. The law enforcement agencies need to submit to the DHSMV the following information to stay in compliance: a) Brief summary of incident on agency letterhead; b) Outcome of review; c) Number of records compromised; d) Were the owners of the compromised information notified?; e) If not, when will notification occur? f) What disciplinary action (if any) took place due to this misuse? and g) How does your agency plan on DAVID misuse not occurring again?

260. The compliance requirements of Memorandum of Understanding also require that the individual law enforcement agencies that utilize D.A.V.I.D.: a) Conduct quarterly quality controls on user accounts; b) Regularly monitor access o information; and  c) Conduct annual audit to ensure proper use and dissemination

261. On information and belief, the Individual Defendants' training included monitions against viewing private driver's license information for unofficial purposes, unless it was their own private driver's license information.

262. Whatever training, monitoring, or inquiry into the officers' usage of the information systems has been adopted it is woefully inadequate to ensure that access is used properly and lawfully.

263.  On information and belief, despite this training, Defendant Entities and Defendant Supervisors, allowed their employees, including but not limited to the Individual Defendants, to view Plaintiffs' private driver's license information for unlawful purposes.

264. On information and belief, Defendant Entities, Defendant Supervisors, the FDLE and FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of Defendant Jones, permitted, condoned, or acquiesced in this illegal access to Plaintiffs' private information, and knew or should have known that it was occurring.

265. On information and belief, this illegal access occurs with regularity not only of Plaintiffs' private information but of other Florida driver's private information.

266. Defendant Entities, Defendant Supervisors, the FDLE and FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of Defendant Jones, have lax policies or lax enforcement of these policies that allow for these intrusions.

267.  Defendant Entities, Defendant Supervisors, the FDLE and FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of Defendant Jones, either have no viable method or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their officers.

268.  In or about August 2011, Toni Foudy, contacted the FDLE in regards to the nearly six-hundred (600) unlawful access of her information by law enforcement personnel and the fact that her and her family feared for their privacy and safety.

269. In or about August 2011, Toni Foudy, contacted Governor Rick Scott in regards to the

nearly six-hundred (600) unlawful access of her information by law enforcement personnel and the fact that her and her family feared for their privacy and safety.

270. The Governor's office informed her to report her concerns to the agencies whose personnel had accessed her information.

271. In or about September 2011, Toni Foudy, received an e-mail from General Counsel Pam Bondi and suggested she report the allegations to the FDLE, DHSMV, and the Department of Justice.

272. Toni Foudy also contacted FDLE general counsel Micheal Ramage in regards to the nearly six-hundred (600) unlawful access of her information by law enforcement personnel and the fact that her and her family feared for their privacy and safety.

273. Toni Foudy also contacted the Federal Bureau of Investigations (FBI) for assistance.

274.  Based on information and belief, Toni Foudy's immediate family, all women, whose private personal information was accessed without a legitimate law enforcement purpose, never waived the protections of the DPPA.

275.  Based on information and belief, Toni Foudy's immediate family that were searched on D.A.V.I.D do not have a criminal history and nor have they been the subject of a law-enforcement investigation.

276.  Toni Foudy accessed her information on D.A.V.I.D several times to confirm that the DHSMV had properly updated her information to state her proper place of birth. Toni Foudy did this when another deputy stated that he "did not know she was born in Nebraska?" She was not.

277.  Toni Foudy never waived the protections of the DPPA.

278.  Shaun Foudy never waived the protections of the DPPA.

### III.   Toni and Shaun Foudy Have Been Significantly Harmed By This Intrusion into Their Private Life

279.  The sheer quantity of these intrusions into Toni Foudy's private life, Shaun Foudy's private life, and the immediate family of Toni Foudy's private life demonstrates that law-enforcement personnel are unfairly hostile toward the Foudy' privacy and safety.

280.  As a result of this invasion of privacy, the Foudy's do not feel comfortable going to public places where law enforcement personnel are likely to be around and has lost their sense of freedom, including their sense of freedom to travel and enjoy public places.

281.  As a result of this invasion of privacy, the Foudy's do not feel comfortable in their own home as law enforcement personnel vehicles slowly drive by their home on a continuous basis, for no apparent purpose.

282.  As a result of this invasion of privacy, the Foudy's have been forced to significantly alter their social activities and have an effect become hermits.

283.  As a result of this invasion of privacy, Toni Foudy has significantly changed her hairstyle by cutting it drastically and changing her hair color.

284.  As a result of this invasion of privacy, the Foudy's have purchased different vehicles.

285.  As a result of the invasion of privacy, the Foudy's feel that they have lost any control over the privacy in her life.

286.  As a result of the invasion of privacy, Toni Foudy has severely restricted her interactions on any social media sites.

287.  As a result of the invasion of privacy, Shaun Foudy has significantly limited his interaction on any social media sites.

288.  As a result of the invasion of privacy, the Foudy's were compelled to relocate twice.

289.  As a result of the invasion of privacy, the Foudy's will relocate in the future.

290.  As a result of the invasion of privacy, Toni Foudy was unable to return to work due to its mental and physical impact.

291.  As a result of the invasion of privacy, Shaun Foudy did not let his son participate in the St. Patrick's Day parade with his karate class, since it was a public event.

292.  As a result of the invasion of privacy, the Foudy's fear contacting law enforcement agents in an emergency situation.

293.  As a result of the invasion of privacy, the Foudy's have suffered significant marital relationship issues.

294.  As a result of the invasion of privacy, the Foudy's have experienced a loss of consortium due to physical and emotional inability to be intimate.

295.  As a result of the invasion of privacy, the Foudy's are unable to provide their son the quality time and attention he deserves.

296.  As a result of the invasion of privacy, had to hire two private investigators.

297.  As a result of the invasion of privacy, Toni Foudy only worked  five (5) of the minimum one hundred fifty (150) hours needed during the fiscal-year period October 2011 to October 2012 for Walt Disney.

298.  As a result of the invasion of privacy, Toni Foudy lost her part-time employment with Walt Disney in October 2012, as a result of her inability to physically and mentally work the required hours needed to maintain her position as Snow White.

299.  As a result of the invasion of privacy, Toni Foudy and Shaun Foudy have lost friends due to the fact that some long-time family friends are employed by the Defendant Entities and fear conflict.

300.  Toni Foudy in addition to being fearful and anxious about her safety, is also concerned

about the long-term impact of her compromised private and highly restricted personal

information, which may be used for an unauthorized purpose at any time.

301. Shaun Foudy in addition to being fearful and anxious about his safety and his family's

safety, is also concerned about the long-term impact of his compromised private and

highly restricted personal information, which may be used for an unauthorized purpose at

any time.

**COUNT I: 18 U.S.C. § 2721,** *et seq.*
Violation of the Driver's Privacy Protection Act
*(Against All Defendants, including Jane, John and Entity Does)*

302. Plaintiffs hereby realleges and incorporates paragraphs 1 through 301 of this

Complaint, as if fully set forth in this paragraph.

303. Toni Foudy and Shaun Foudy provided information to the DHSMV, including

their home address, color photograph or image, social security number, date of birth, state

of birth, detailed vehicle registration information and description, prior and current home

and mailing addresses, emergency contacts and those contacts private and highly-

restricted personal information, in part, for the purpose of acquiring and using a Florida

driver's license.

304. The DHSMV also maintains Plaintiffs driving record and that information is

made available on the D.A.V.I.D system.

305. At no time did Toni Foudy and Shaun Foudy provide their consent for any of the

Defendant Individuals to obtain, disclose or use, or for any of the Defendant Entities or

Defendant Supervisors to disclose or to allow Defendant Individuals to obtain, disclose or

use her private information for anything but official law enforcement business.

306. Intentionally obtaining, disclosing or using a driver's license information without

an authorized purpose is a violation of DPPA. The statute provides for criminal fines and civil penalties. 18 U.S.C. §§ 2723, 2724.

307.     The DPPA provides relief for violations of a person's protected interest in the privacy of their motor vehicle records and the identifying information therein.

308.     The Defendants, each of them, have invaded Toni Foudy and Shaun Foudy's legally protected interest under the DPPA.

309.     The FDLE and the FDLE Does, under the direction of Defendant Bailey, and the DHSMV and the DHSMV Does, under the direction of Defendant Jones, knowingly disclosed Plaintiffs private information personal information for purposes not permitted under the DPPA.

310.     According to the Defendant Entities, the majority of the Individual Defendants knowingly obtained, disclosed, or used Plaintiffs' personal information, from D.AV.I.D. for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

311.     None of the Individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Plaintiffs' private information.

312.     By the actions described above, each Individual Defendant law enforcement personnel was acting within the scope of his or her employment when he or she obtained, disclosed or used Plaintiffs' personal information from the Driver and Vehicle Information Database for an impressible purpose.

313.     The Individual Defendants knew or should have known that their actions related to Plaintiffs' personal information were in violation of the DPPA.

314.     The Entity Defendants and Defendant Supervisors knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining,

disclosing or using of Plaintiffs' private personal information by the Individual

Defendants.

315.     The ridiculous volume of law enforcement personnel that obtained, disclosed or

used Plaintiffs' private highly-restricted personal information, especially given Toni

Foudy and Shaun Foudy's lack of a criminal record, makes apparent that Defendants' use

was not permissible.

316.     Toni Foudy and Shaun Foudy's have suffered harm because their private

information has been obtained unlawfully. Toni Foudy and Shaun Foudy's suffered and

continues to suffer harm by virtue of the increased risk that their protected information is

in the possession of law enforcement personnel who obtained it without a legitimate

purpose. This is precisely the harm that Congress sought to prevent by enacting the

DPPA and its statutory remedies.

317.     The Individual Defendants, Supervisor Defendants and Entity Defendants each

willfully and recklessly disregarded the law, entitling Toni Foudy and Shaun Foudy's to

punitive damages under the DPPA, *see* 18 U.S.C. § 2724(b)(2), which is not subject to

the pleading requirement of Florida state law as set forth in Fla. Sta. § 768.72. Plaintiffs

are entitled to actual, punitive damages, reasonable attorneys' fees and other litigation

costs reasonably incurred, and such other preliminary and equitable relief as the court

determines to be appropriate. 18 U.S.C. § 2724(b).

318.     In addition, under the DPPA, the Plaintiffs are entitled to a baseline liquidated

damages award for at least $2,500 for each violation of the DPPA. 18 U.S.C. §

2721(b)(1). Toni Foudy and Shaun Foudy's need not prove actual damages to receive

liquidated damages.

## COUNT II: 42 U.S.C. § 1983
Violation of Plaintiffs' Civil Rights Under the DPPA
*Against Individual Defendants, including Jane and John Does*

319.    Plaintiffs hereby realleges and incorporates paragraphs 1 through 301 of this

Complaint, as if fully set forth in this paragraph.

320.    At no time did Toni Foudy and Shaun Foudy's behave in a manner that would

provide any legal justification for the invasion of privacy.

321.    The DPPA establishes that obtaining an individual's driver's license information

without a legitimate purpose constitutes an illegal search under the meaning of the Fourth

Amendment to the Bill of Rights.

322.    The Individual Defendants' viewing of Toni Foudy and Shaun Foudy's personal

information was unauthorized, unjustified, and excessive, it violates the laws of the State

of Florida, the Fourth Amendment, and the laws of the United States.

323.    By the actions described above, each Individual Defendant Law Enforcement,

acting under the color of state law, violated and deprived Toni Foudy and Shaun Foudy's

of their clearly established and well-settled civil rights to be free from an unconstitutional

search.

324.    The acts of each Defendant Law Enforcement personnel, acting under color of

state law, constituted an invasion or repeated invasions of Toni Foudy and Shaun Foudy's

clearly established privacy rights, guaranteed by the Bill of Rights and the Fourth

Amendment to the United States Constitution, the laws of the United States, including the

DPPA, and the laws of the State of Florida.

325.     The DPPA creates an individual right to privacy in a person's driver's license information, thereby prohibiting unauthorized accessing of all person's information, including Toni Foudy and Shaun Foudy's personal private information.

326.     Each individual law enforcement personnel, acting under color of state law, knew or should have known that his or her actions violated and deprived Toni Foudy and Shaun Foudy's of their clearly established statutory rights under the DPPA.

327.     Each Individual Defendant law enforcement personnel was deliberately indifferent to Toni Foudy and Shaun Foudy's statutory and civil right to be free from illegal searches, invasions of privacy and the unauthorized accessing of their private driver's license information.

328.     As a direct and proximate result of the acts and omissions of the above-named Individual Defendants, Toni Foudy and Shaun Foudy's endured physical and mental suffering, and was damaged in an amount yet to be determined, but believed to be well in excess of One Million ($1,000,000) Dollars.

329.     Punitive damages are available against Individual Defendant law enforcement personnel for their reckless and callous disregard for Plaintiffs' rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirement for punitive damages set forth in Fla. Sta. § 768.72.

330.   Plaintiff is entitled to recovery of her costs, including reasonable attorney fees, pursuant to 42 U.S.C. § 1988.

**COUNT III: 42 U.S.C. § 1983**
Violation of Plaintiffs' Civil Rights Under the DPPA
*Against Entity Defendants, Supervisor Defendants, including Jane, John and Entity Does*

331.   Plaintiffs hereby realleges and incorporates paragraphs 1 through 301 of this
Complaint, as if fully set forth in this paragraph.

332.   The Individual Defendants' numerous accesses of Toni Foudy and Shaun Foudy's
private information are not unique but one example of how frequently such law
enforcement agencies customarily violate the DPPA by accessing private driver's license
information of persons without having any legitimate or permissible reason for doing so.

333.   Several articles have been published in regards to police officers unlawfully using law
enforcement databases as a form of social media, using it to look up friends or
acquaintances, and in some other less benign cases, using it to plan or commit crimes.

334.   Furthermore, individuals familiar with police departments procedures state that it is
accepted and common practice for law enforcement personnel, including officers and
their supervisors, to unlawfully and impermissibly access an individuals information on
law enforcement databases, and these individual law enforcement personnel are rarely if
ever held accountable.

335.   The foregoing information, other information to be presented at trial, and evidence
reasonably likely to be determined after full discovery demonstrate that the improper
access' of citizens drivers' license information by Defendant Law Enforcement Personnel
for their own personal and private uses, obtained by accessing that information through
the computerized information storage system kept by the state and federal government for
official purposes only, is an official custom or practice well known to Defendant
Supervisors.

336.   These customs and practices by Defendant Law Enforcement Personnel are a deviation
from the written rules set down by Entity Defendants, but these formal rules are widely

and intentionally disregarded.

337.  Given the political subdivisions, municipalities, and law enforcement agencies failure to monitor and enforce the rules for D.A.V.I.D., the aforementioned customs and practices are attributable to the political subdivision, municipalities, and law enforcement agencies themselves, including the Entity Defendants herein.

338.  The Defendant Entities and the Defendant Supervisors of the law enforcement personnel accessing this information knew or should have known of this and other unlawful, improper, unjustified, and impermissible access to private information by law enforcement personnel.

339.  The prevalence of this custom, the lack of monitoring regarding these access practices and the failure to take action to stop or prevent these practices, demonstrate the state of mind of Defendant Supervisors and mind of the officials of the municipalities, including other political subdivisions, of the Entity Defendants. These customs and practices further demonstrate Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including the Plaintiffs, whose information has been wrongfully and unlawfully accessed.

340.  The Defendant Entities, in their official capacity, are directly liable for the custom and practice for the widespread illegal access of citizen's driver's licenses information. The Supervisor Defendants, up to and including the Chief of Police, Sheriff, and Mayor, employed by each Entity Defendant, are liable in their individual capacity. Defendants' liability is due to their actual and constructive knowledge of this practice, their failure to institute any process for monitoring and preventing it and their deliberate indifference to the federal rights of those persons, including the Plaintiffs, whose information has been

and continues to be wrongfully accessed.

341.   In addition, the Defendant Supervisors of law enforcement personnel, up to and including the Chief of Police, Sheriff, and Mayor, in each of the Defendant Entities, are liable in their individual capacities for their failure to train, monitor, supervise, and properly discipline the officers who are improperly and unlawfully accessing the private driver's license information of citizens, including the Plaintiffs, without a proper, lawful, permissible, justifiable purpose for doing so. This pattern of failure to train, monitor, supervise, and discipline demonstrates the state of mind of these Defendant Supervisors and a deliberate indifference to the rights of the citizens and others whose information has been so widely accessed, including the Plaintiffs.

342.   The federal rights of the citizens, including each Plaintiff, whose information is improperly accessed, are held in light regard by many if not most of the Defendant Supervisors and by the Defendant Entities themselves.

343.   Defendants' lack of concern evidences their deliberate indifference both to the problem of the unauthorized access on the federal rights of the citizens, including the Plaintiffs, who would often be unaware of the access.

344.   Defendant's lack of concern is evidenced by the failure of most Defendant Entities to take any sort of corrective action upon learning that multiple, improper, unlawful, unjustified accesses of Plaintiffs' information had taken place. Defendants have also consistently refused to thoroughly disclose to the Plaintiffs, keep them fully informed of the progress of the investigation into the persons accessing their information, or to advise her of their identities, their reasons for accessing the Plaintiffs' information, their knowledge of Plaintiffs, and any discipline imposed on them for the improper and illegal

conduct, in clear violation of Florida Statute Section 817.5681.

345.   The manner in which the investigations are handled by the Entity Defendants and Supervisor Defendants provides little expectation that these and other law enforcement personnel will cease accessing Plaintiffs' private information and the private information of other persons similarly situated to the Plaintiffs, without a justifiable, permissible basis.

346.   To the best of Plaintiffs' knowledge, no system has been established by the Entity Defendants and Supervisor Defendants to monitor the regular access of the D.A.V.I.D. system by law enforcement personnel.

347.   To the best of Plaintiffs' knowledge, no reviews have taken place of other accesses of the D.A.V.I.D system by the same law enforcement personnel, or other officers and employees in the Defendant Entities.

348.   To the best of Plaintiffs' knowledge, no attempt has been made by the Entity Defendants and Supervisor Defendants to protect and safeguard the rights of other persons' private and highly restricted personal information that is in the possession of DHSMV.

349.   To the best of Plaintiffs' knowledge, no attempt has been made by the Entity Defendants and Supervisor Defendants to provide redress and assurances to the persons, including Plaintiff, whose driver's license private and highly restricted personal information has been wrongfully accessed via D.A.V.I.D. or any other law enforcement database that falls under the DPPA by the Defendant Law Enforcement Personnel named in this Complaint, or by other officers in the municipalities and other political subdivisions named in this Complaint.

350.   Defendants' accesses have been widely discussed among the Defendant Law
Enforcement Personnel committing the accesses as well as among other personnel in the
Defendant Entities – all of which have damaged the Plaintiffs and their reputation, and
their ability to perform any job effectively.

351.   The reputational damage alone to Plaintiff, as well as the knowledge that this activity
is not merely unlawful but a federal crime, should have been enough to ensure that
Plaintiffs' concerns listed in the preceding paragraphs were addressed by the Defendants
in a substantive fashion. Holding accountable the law enforcement personnel engaged in
an unlawful activity would have been an important in eliminating this custom and
practice of permitting the widespread illegal accessing of Plaintiffs' information yet
nothing meaningful in this regard has been accomplished, and no prosecutions have been
initiated to the best of Plaintiffs' knowledge.

352.   As a direct and proximate result of the acts and omissions of the above-named
Defendants Entities and Defendant Supervisors, Toni Foudy and Shaun Foudy's has
endured and continues to endure physical and mental suffering, and has been damaged in
an amount yet to be determined and of a continuing nature, but believed to be well in
excess of One Million ($1,000,000) Dollars for each Plaintiff.

353.   Punitive damages are available against Defendants Entities and Defendant Supervisors
for their reckless and callous disregard for Plaintiffs' rights and their intentional
violations of federal law, and are hereby claimed as a matter of common law, *Smith v.
Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirement for
punitive damages set forth in Fla. Sta. § 768.72.

354.   Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees,

under 42 U.S.C. § 1988.

## COUNT IV: 42 U.S.C. § 1983
## Violation of Civil Rights Under the DPPA
### *Against Defendants Jones and Bailey*

355.   Plaintiffs hereby realleges and incorporates paragraphs 1 through 301 of this

Complaint, as if fully set forth in this paragraph.

356.   Defendant Jones became the Executive Director of the Department of Highway Safety

and Motor Vehicles on September 29, 2009 and presently serves in that role.

357.   Defendant Bailey became the Commissioner of the Florida Department of Law

Enforcement on December 5, 2006 and presently serves in that role.

358.   Defendant Jones as the Executive Director of DHSMV and Defendant Bailey as

Commissioner of the FDLE were and are responsible for creating, maintaining, and

providing access to the database that included Plaintiff s driver's license information.

359.   Defendants Jones and Bailey also had the ability to determine if unauthorized access

was being made and to prevent such unauthorized access to the database, including, of

Plaintiffs' driver's license information, and have an ongoing duty to prevent such

unauthorized accesses.

360.   Defendants Jones and Bailey failed to prevent unauthorized access to the database,

including Plaintiffs' driver's license information.

361.   The actions of Defendants Jones and Bailey, as alleged, violate the rights of the

Plaintiff under the Fourth and Fourteenth Amendment of the United States Constitution.

362.   On information and belief, Defendants Jones and Bailey, created or oversaw the

creation and maintenance of a database and system that was supposed to prevent

unauthorized access to driver's license information.

363.   From October 2005, Defendants Jones and Bailey allowed unauthorized access of Toni Foudy and Shaun Foudy's driver's license information such that approximately more than 100 law enforcement personnel from at least two different law enforcement departments accessed Toni Foudy and Shaun Foudy information more than 500 times over a five-year period.

364.   On information and belief, Defendants Jones and Bailey's efforts have been insufficient to prevent future unauthorized access of Plaintiffs' and other individuals' private, personal information.

365.   Defendants Jones and Bailey have sanctioned the constitutional violations by the Defendant Law Enforcement Personnel through their failure to remedy the policy, custom, and practice of officers' and employees' unfettered and unauthorized access to the database.

366.   Defendants Jones and Bailey have been grossly negligent in supervising subordinates responsible for implementing a law enforcement database that prevents unauthorized access to private, personal information.

367.   On information and belief, Defendants Jones and Bailey failed to monitor and prevent unauthorized access to private, personal information even though or should have known such unconstitutional acts were occurring.

368.   Defendants Jones and Bailey, acting under the color of state law, were deliberately indifferent to Plaintiffs' constitutionally-recognized and federal statutory rights to be free from illegal searches, invasions of privacy and the unauthorized accessing of her private driver's license information.

369.   As a direct and proximate result of the acts and omissions of Defendants Jones and

Bailey, Toni Foudy and Shaun Foudy, individually, were forced to endure physical and

mental suffering, and were thereby damaged in an amount yet to be determined, but

believed to be well in excess of One Million ($1,000,000) Dollars each.

370.   Punitive damages are available against Defendants Jones and Bailey for their reckless

and callous disregard for Plaintiffs' rights and their intentional violations of federal law,

and are hereby claimed as a matter of common law, *Smith v. Wade*, 461 U.S. 30 (1983),

and, as such, are not subject to the pleading requirement for punitive damages set forth in

Fla. Sta. § 768.72.

371.   Plaintiff is entitled to recovery of her costs, including reasonable attorney fees, under

42 U.S.C. § 1988.

### COUNT V: State Law Claim
### Tort of Invasion of Privacy
*Against All Defendants, including Jane, John and Entity Does*

372.   Plaintiffs hereby realleges and incorporates paragraphs 1 through 301 of this

Complaint, as if fully set forth in this paragraph.

373.  By improperly obtaining Plaintiffs' private personal information for impermissible

reasons, Defendants intentionally intruded upon the solitude or seclusion Plaintiffs'

private affairs and concerns.

374.  The Defendants' intrusion would be highly offensive to a reasonable person.

375.  The Defendants' intrusion caused Toni Foudy and Shaun Foudy's to suffer severe

emotional distress and physical harm.

376.  The Defendants' intrusion was intended to cause Toni Foudy and Shaun Foudy's to

suffer severe emotional distress and physical harm, and was made with either actual or

legal malice, or with reckless disregard of Plaintiffs' rights and their privacy.

377.  Each Plaintiff is entitled to tort damages for Defendants' invasion of privacy.


## JURY DEMAND

378.  Plaintiffs demand a jury trial as to all issues of fact herein properly triable to a jury under any statute or under common law.

WHEREFORE, Plaintiff Toni Foudy and Plaintiff Shaun Foudy, each individually, prays for judgment against the Defendants as follows:

A.  A money judgment against all the Defendants for liquidated, actual and compensatory damages in an amount in excess of One Million ($1,000,000) Dollars and punitive damages in an amount to be determined by the jury, together with their costs, including reasonable attorney fees, under 42 U.S.C. §1988, the DPPA, and other applicable laws, and prejudgment interest;

B.  Actual damages, punitive damages, attorney's fees and other litigation costs and such other preliminary and equitable relief as the court determines to be appropriate under 18 § U.S.C. 2724(b);

C.  Liquidated damages of at least $2,500 for each violation of the DPPA under l8 U.S.C. § 2721(b)(1);

D.  An injunction, permanently enjoining all Defendants from viewing either Plaintiffs private information in violation of the DPPA, unless necessary for law enforcement purposes;

E.  A permanent injunction, barring Defendant Individuals from trespassing or instructing proxies to trespass on either Plaintiffs property or otherwise harass Toni Foudy and

Shaun Foudy or infringe in any way on their privacy and their right against the invasion of their respective privacy;

F.   A permanent injunction, allowing both Plaintiffs to use a post-office box in place of an address on their Florida Driver's License; and,

G.   For such other and further relief as this Court deems just and equitable.


Dated: 6th May 2013

Respectfully submitted,


/s/Mirta Desir_____
Mirta Desir (NY 4805057 / FL 90103 )
Desir & Associates
P.O. Box 1052
West Palm Beach, Florida 33402
T.: 800.982.5280 ext. 2
E: mdesir@desirlaw.com

Attorney for Plaintiffs